Jacob Wiley et al., partners as Machinists Association,

*v.*

The Board of Education of the Town of Minneapolis.

In an action upon a bond issued under an act of the Legislature entitled "An act authorizing the Board of Education of the town of Minneapolis to borrow money," approved August 11, 1858, the complaint alleged, that the defendant, on the 17th of September, 1858, for the purpose of paying said indebtedness, and * * * pursuant to the provisions of said * act, duly called and ordered an election of the legal voters of said town of Minneapolis, for the purpose of voting for or against the issuance of bonds of said defendant, &c.; to be held at Woodman's Hall, in said town, on the 2d day of October, 1858 ; that prior to said last named day, due and public notice of said election was

given according to the provisions of said act, which said notice was duly printed, published and posted, and contained the purpose aforesaid, for which said bonds were to be issued, and all the requisite and necessary statements, and was in substance and form, and in all things as required by said act; that upon said October 2, 1858, said election was duly held, and conducted in obedience and conformity to said act, and said notice thereof. *Held*, that these were sufficient allegations of the election ordered, the notice thereof, and the holding of the election.

If a creditor, within the act, sees proper to take the bonds of the defendant issued directly to him in payment of his debt, it is a substantial compliance with the law.

The bonds are negotiable, and the plaintiffs are *bona fide* holders for value. The defendant having power, under the act, to issue bonds of this character, and the complaint alleging that the bonds were executed and delivered by the defendant, the presumption, *prima facie* at least, is that the bonds were legally issued. If the fact that the bonds were not issued in accordance with the terms of the act conferring the authority to issue them, can be taken advantage of as against an assignee of the bonds for value, and without notice, it must be taken by answer, and not by demurrer.

It is not necessary that the complaint should show that a *record* of the election held under the act, was made.

The obligatory portion or body of the bond is in the name of "The Board of Education of the town of Minneapolis, and their successors in office;" the concluding or ensealing clause is in the following language : "In witness whereof, the President, Inspectors and Secretary of said Board of Education, have hereunto set their hands and seals the fourth day of October, A. D. one thousand eight hundred and fifty-eight;" to which is signed the name of one person "President," four others as "Inspectors," and attested by one as "Secretary," a scroll being attached to each signature. *Held*, that the instrument is the bond of the corporation. The annexation of a separate scroll for a seal opposite each name, does not vitiate the bonds, nor render the signers of them personally liable in the case.

The complaint alleges that the defendant is a corporation, and that it, by its duly elected and qualified officers, under their hands and seals, executed the bonds. *Held*, that on demurrer, this is a sufficient averment of the execution of the bonds by defendant.

This is an appeal from an order of the District Court for Hennepin county, overruling a demurrer to the complaint. The suit was brought to recover the principal and interest due upon three bonds alleged to have been executed by the defendant to one Ivory F. Woodman, under an act of the Legis-

lature entitled "An act authorizing the board of education of the town of Minneapolis to borrow money," approved August 11, 1858, and to have been sold and transferred to plaintiffs, for value, before maturity.

The specific objections to the complaint raised by the demurrer are: First—"Because it does not appear from the complaint, that any notice of an election was given, or election had by the voters of said school district, to determine whether bonds should be issued for the borrowing of money, as required by the said act referred to in said complaint. Second, because it appears from the complaint that no money was borrowed upon the bonds, but that they were delivered to one Woodman, on account of his alleged claim against the defendant; it does not appear that said school district was indebted to said Woodman; it does not appear that said Woodman accepted and received said bonds in payment or on account of his alleged claim against the defendant; it does not appear that said bonds were not taken by said Woodman at less than par. Third, it does not appear that any record of the alleged election was made, as required by said act referred to in the complaint as authorizing said loan. And fourth, because said bonds are not executed as required by said act."

In respect to the matters contained in the first objection, the allegations of the complaint are, "that said defendant, on said September 17, 1858, for the purpose of paying said indebtedness, and pursuant to the provisions of said * * * act, duly called and ordered an election of the legal voters of said town of Minneapolis, for the purpose of voting for or against the issuance of bonds by said defendant, in said sums therefor, to be held at Woodman's Hall, in said town, upon the 2d day of October, 1858; that prior to said last named day, due and public notice of said election was given according to the provisions of said act, which said notice was duly printed, published and posted, and contained the purpose aforesaid for which said bonds were to be issued, and all the requisite and neces-

sary statements, and was in substance and form, and in all things as required by said act; that upon said October 2, 1858, said election was duly held and conducted in obedience and conformity to said act and said notice thereof, at which said election a majority of the legal voters present and voting thereat, voted for the issuance of said bonds," etc.

In regard to the fourth objection, the complaint alleges in respect to each of said bonds, "that the defendant is an incorporation," refers to the act of incorporation, gives its title, and the date of its approval; "that the defendant, by its duly elected and qualified officers, and under their hands and seals, in consideration of the premises, and for value received, upon the fourth day of October, 1858, duly made and executed, and delivered to the said Ivory F. Woodman,   *   *   * its certain bond or writing obligatory," etc.   It sets out *hæc verba* each bond, which contains, among other things, the following :   " Be it known, that the board of education of the town of Minneapolis,   *   *   *   and their successors in office, are held and firmly bound to I. F. Woodman or bearer, in the sum of   *   *   *   for value received, which sum the board of education, and their successors in office, are obligated to pay, etc.   *   *   *   In witness whereof, the president, inspectors and secretary of the said board of education have hereunto set their hands and seals," etc.   To which is signed the name of one person, "President," four others, "Inspectors," and attested by one, as " Secretary ; " a scroll being attached to each signature.

SMITH & GILMAN, for appellants.

Appellants' counsel insist upon the objections raised by the demurrer, but cite no authorities.

F. R. E. Cornell, for respondent.

I.   In determining the effect of the complaint on demurrer its allegations must be liberally construed.   Sec. LXXV, p. 542 Pub. Stat.; *Allen v. Patterson*, 3 Selden, 476; *Huey v. Pinney*, 5 Minn. R. 322–3.

II.   The first specific ground of objection to the complaint, raised by the demurrer, is the want of averments showing that any notice of election was given or election had, &c., and not the want of averments showing the regularity and sufficiency of such notice and election.   This objection is untrue in fact. As to this point defendant must be confined to the same specific objection made by his demurrer.   But even against objections properly made by demurrer to the regularity, sufficiency or validity of the notice or election, the complaint is good.   Chapter XCVI, p. 291, Laws of 1858; *The People v. Rider*, 2 Kernan R. 434; 23 Barb. S. C. R. 304.

Even though by the terms of the act the board was authorized simply to borrow money on the bonds, and to use such money to pay the indebtedness of the district, the issuance of such bonds directly to the creditors in payment of such indebtedness would be a substantial compliance with such an act.   *Meyer v. The City of Muscatine*, 1 Wallace, U. S. Reps. 392.

But the act in question authorized the board, in express terms, to issue the bonds and to apply them to the purpose of paying the indebtedness.   See Chap. XCVI, p. 291, Laws 1858.

IV.   A fair construction of the pleading shows not only that the district was indebted to Woodman, but that he received the bonds on account of such indebtedness; at least if there is any doubt on this point, defendant's only remedy was by motion to make the pleading in that respect more definite and certain.

V.   As to the objection that it does not appear that the bonds were not taken at less than par, it is answered:

1.  The complaint avers that the district owed Woodman an amount exceeding these bonds, and that they were issued to him for the purpose of paying such indebtedness.  Proof of these two facts would establish *prima facie* at least that the bonds were received at par, and only such facts are necessary to be pleaded, as being proved would entitle the party in the first instance to recover.  Van Santvoord's Pl. 2d Ed. 329 to 331.

2.  The fact of the sale of the bonds at par will be presumed, and its non-existence, if material at all, is matter of defense to be shown by defendant.  See authority last above cited, also *Gelpecke v. City of Dubuque No.* 79, 1 Wallace, U. S. R. p. 221.

3.  The fact of the transfer of the bonds at less than par, if it exists, constitutes no defense as against these plaintiffs who are innocent holders for value, as to which see authorities cited under last point.

VI.  The act in question, so far as it relates to the duty of the clerk in making a record of the election, is directory, and a neglect of such officer in doing his duty in that respect would not vitiate the bonds even in the hands of the payee, much less as against purchasers for value before maturity.

VII.  The bonds appear to be executed in substantial compliance with the statute.  They purport on their face to be the bonds of the corporation issued under the law of 1858, and are executed by all the members of the board officially, and attested by the only officer charged by law with the duties of clerk.

The opinion of the learned Judge below, is so full and conclusive upon this point, that a reference thereto and the authorities there cited, is deemed sufficient.

VIII.  The bonds in question, purport on their face to be "issued in pursuance of the provisions of an act of the Legislature of this State, entitled 'An act authorizing the board of education of the town of Minneapolis to borrow money,' approved

the 11th August, 1858." They are payable to bearer. The act authorizes their issue. The plaintiffs received them in good faith before due and for value. Under these circumstances, the defendants are concluded as to any irregularities in carrying into execution the power to borrow, and cannot set up as a defense that they were sold at less than par, that the notice of election was insufficient, or that the election itself was improperly conducted, or the non-compliance by the defendants with any other provision or requirement of the act in respect to the execution of their authority, because:

1st. It is well settled that bonds of this character, even though under seal, possess the qualities and immunities of negotiable paper; that whenever a corporation has power, under any circumstances, to issue negotiable securities, the *bona fide* holder has a right to presume they were issued under the circumstances which gave the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder, than other commercial paper; "that whenever such bonds on their face import a compliance with the law under which they were issued, the purchaser is not bound to look further;" and even though the law authorizes their issue subject only to certain restrictions, limitations and conditions, such conditions, &c., will be presumed to have been complied with.

2d. Because a non-compliance with the conditions and requirements of the act can only be taken advantage of on an application to restrain the issue of the bonds, and not to repudiate their payment after their issue and the use of the funds realized therefrom. *Commissioners of Knox Co. v. Aspinwall*, 21 How. U. S. Rep. 545–575; *Mercer Co. v. Hacket*, 1 Wal. U. S. Rep. 83; *Gelpecke v. City of Dubuque*, 1 Wal. U. S. R. 220; *Same v. Same*, No. 79, 1 Wal. R. 221; *Vanhastrup v. Madison City*, 1 Wal. R. 291; *Meyer v. The City of Muscatine*, Ib. 392.

*By the Court*—McMILLAN, J.—This case comes up on an appeal from an order overruling a demurrer to the complaint. The allegations in the complaint as to the election ordered, and the notices thereof, and the holding the election, we think, are sufficient; they are conclusions of fact, or at least are not such purely legal conclusions as to be objectionable in pleading. *People ex rel. Crane v. Ryan*, 2 Kernan, 434. The object of the Legislature in the act approved August 11, 1858, under which the defendant proceeded in issuing the bonds in question, was to enable the district to pay off its then existing indebtedness; to accomplish this the act empowers the board, under certain limitations and restrictions, to borrow money and issue bonds. If a creditor within the terms of the act, sees proper to take the bonds of the defendant, issued in pursuance of the act in payment of his debt, the object of the act is certainly accomplished, and we think it is a substantial compliance with the law. The defendant could certainly negotiate the bonds to the creditor for cash, and then pay him his debt with the money. We are unable to see that any principle is violated in avoiding this indirection and formality, by using the bonds directly in payment of the debt. *Meyer v. The City of Muscatine*, 1 Wallace, 392. Nor is it necessary under the terms of this act, that the complaint should aver that the bonds were taken at par. If it should be held that the board was limited in disposing of these bonds, to sell them at par, it must be set up as a defense, and cannot be taken advantage of on demurrer to the complaint. But it is urged by the appellant that there is no allegation of facts showing the defendant indebted to Woodman, nor that he took them in settlement of any claim against the defendant. Whether the allegation of indebtedness in the complaint is sufficient or not, is not material in this case. The bonds are negotiable, and the plaintiffs are *bona fide* holders for value. The defendant having power under the act to issue bonds of this character, and the complaint alleging that the bonds were executed and de-

livered by the defendant, the presumption, *prima faeie*, at least, is that the bonds were legally issued. If the fact that the bonds were not issued in accordance with the terms of the act conferring the authority to issue them, can be taken advantage of as against an assignee of the bonds for value and without notice, it must be taken by answer, and not by demurrer. *Straus v. Eagle Ins. Co.*, 5 Ohio St. R. 62; *Barker v. M. Fire Ins. Co.*, 3 Wend. 94; *Gelpecke v. City of Dubuque*, 1 Wallace, 223; *Nininger v. Carver Co.*, 10 Minn. 133; Ang. & Ames on Corp. Sec. 267.

We do not deem it necessary that the complaint should show that a record of the election, held under the provisions of this act, was made. We have already determined that the averment as to the holding of the election is sufficient; that fact, therefore, distinctly appears. Assuming, for the purposes of this demurrer, that the question as to the election may be inquired into between these parties, the election is the material fact, and however the *proof* of this fact may be affected by the failure to keep a record of it, we think the record is not essential to the power of the board to issue the bonds. The fourth point urged by the appellant is, that the bonds are not executed as required by said act; they should have been executed by the officers of the board as the "Board of Education," whereas, they are only executed by some persons styling themselves "President and Inspectors," and it is not alleged, even, that they were such officers as they style themselves, and the bonds are not attested by any clerk of the district, and they have not the corporate seal of the defendant, but only the individual seal of the "President and Inspectors." The language of the act in reference to the execution of the bonds is, that "the Board of Education shall issue their bond, or bonds, executed in their name of office, binding themselves and their successors in office, for the payment of such sums as may be borrowed, and upon such terms as may be agreed upon, which bond, or bonds, shall be attested by

the clerk of said school district." The obligatory portion or body of the bonds, is in the name of the "Board of Education of the town of Minneapolis, and their successors in office." The concluding or ensealing clause is in the following language: "In witness whereof, the President, Inspectors, and Secretary of said Board of Education, have hereunto set their hands and seals, the fourth day of October, Anno Domini, one thousand eight hundred and fifty-eight;" to which is signed the names of one person, "President," four others "Inspectors," and attested by one as "Secretary," a scroll being attached to each signature. It is altogether proper, under this legislation, that the officers of the board should execute the bonds issued in pursuance of it; the only question is, whether, by the language of the ensealing clause, the bond is made the act of the individuals signing it, or does it stand as the bond of the corporation, conceding them to be the officers? We think the latter view must obtain; it would have been more accurate, undoubtedly, to have used the corporate style of the defendant in the ensealing clause, but we think there is nothing in the language used which is inconsistent with the body of the bond, purporting to be the bond of the Board of Education. No individual is named in the ensealing clause, but only certain officers by their titles, and these, the officers of the board who must or may sign the bond, to constitute it the bond of the obligor. It is correctly stated by his Honor, the Judge of the District Court, that "the act incorporating the defendant (Laws 1857, Extra Sess. p. 168) does not require or direct any corporate seal, nor define in what manner the board should execute instruments in writing. Sections 4, 5, and 6, prescribe the officers of the board and their duties; the board has no officer technically called 'clerk,' and there is no such officer in the School District under this act. The functions of clerk are performed by the secretary of the board; section 6. The act requiring the bonds to be attested by the clerk of the district, must be

construed in connection with the act of 1857, and the attestation by the secretary of the board is all that could be done, and is, we think, a sufficient compliance with the law. The annexation of a separate scroll for a seal, opposite each name, does not vitiate the bonds, nor render the signers of them personally liable in this case. The repetition of the seal is immaterial." *Reynolds v. Glasgow Academy*, 6 Dana 37 ; *Milldam Foundry v. Hovey*, 21 Pick. 417.

The complaint alleges that the defendant is a corporation, and that it, by its duly elected and qualified officers, and under their hands and seals, executed the bonds sued upon ; *these* facts, admitted by the demurrer, constitute a sufficient averment of the execution of the bonds by the defendant. *Nininger v. Carver Co.*, 10 Minn. 133.

The order overruling the demurrer is sustained.