———o———

WILEY MOORE, Respondent, *vs.* WILLIAM J. WINGATE, Appellant.

1: *Practice, civil—Instructions in chancery proceedings.*—It is not error to refuse instructions in equitable proceedings in the nature of a bill in chancery.

2. *Administrator's deed— Clerical errors may be corrected.*—An administrator's deed, which contains all the recitals as to notice, appraisement, sale, etc., required by the statute; (W. S., 98, §§ 35, 37) but sets out certain dates which are irreconcilable, may be explained and corrected by the introduction of the appraisement, report of sale and other like original papers. Such errors are merely clerical ones, which may be corrected by extrinsic evidence.

3. *Administration—Appraisers, oaths of.*—An appraisement of property for the purpose of administrator's sale, sworn to by two out of three appraisers, is a sufficient compliance with the law. (W. S., 887, § 6.)

4. *Administrator—Appraisement—Jurat, etc.*—An administrator's sale is not rendered void by reason of the fact that the person taking the affidavit of the appraisers subscribes himself as administrator.

Moore v. Wingate.

5. *Husband and wife—Married women as witnesses—Construction of statute.*—Sec tion 5 of the statute concerning Witnesses (W. S., 1873) holding married women incompetent to testify as to admissions and conversations of their husbands, was intended to apply to all cases, whether the husband was a party or not.

6. *Lands and land titles; Condition broken, entry etc.*—Where the grantee in a conveyance performed no part of the condition or consideration without which the deed was not to vest title, no formal entry for condition broken would be necessary on the part of a grantor who had remained all the time on the land.

7. *Conveyances—Condition broken—Entry for transfer—Chancery—Proceedings in, when proper.*—The grantor in a deed made on condition may, after entry for condition broken, transfer the estate to a third party; or he may convey where the estate was only to vest on the performance of a condition which remained unperformed. And the transferee in such case, having a plain remedy at law, must resort to ejectment to dispossess the grantee in the original deed, and cannot invoke the aid of Chancery, unless where defendant in maintaining his claim could be shown to be throwing a cloud on his title.

*Appeal from Linn Circuit Court.*

*Mullins & Easley*, for Appellant.

I. The fact that the grantor remained in possession after condition broken, is not sufficient. It must be shown that it was done with the intention to claim the forfeiture. (Williard vs. Henry, 2 N. H., 120.)

The authorities which hold that a re-entry is not necessary, or that remaining in possession is presumedly holding for the forfeiture, like 5 Mass., 320, are based upon statutes like G. S. Mass., 1860, Ch. 134, § 3.

II. Respondent has a remedy at law, and equity never lends its aid to enforce a forfeiture. (4 Kent's Com., 130; 2 Sto. Eq. § 1319; Livingston vs. Tompkins, 4 Johns., Ch. 415; Warner vs. Bennett, 31 Conn., 468; Horsburg vs. Baker, 1 Pet., 232.)

*G. D. Burgess*, for Respondent.

I. Mrs. Grice was not a competent witness. She was a party to the deed from Daniel Grice and wife to the appellant, the instrument upon which this action is based, and Daniel Grice being dead, she was not a competent witness. (W. S., 1372, § 1; Anderson vs. Hance, 49 Mo., 159.)

She is clearly declared to be incompetent by our statute. (W. S., 1373, § 5.)

II. Grice's remaining on the land under the circumstances amounted to an entry. (Lincoln & Kennebeck Bank vs. Drummond, 5 Mass., 321; 1 Bouv. Law Dict., 315; 4 Kent's Com., (11 Ed.) 134, 137, 139; Stuyvesant vs. Mayor of N. Y., 11 Paige, 415; Gray vs. Blanchard, 8 Pick., 283; Hubbard vs. Hubbard, 97 Mass., 192; Andrews vs. Senter, 32 Maine, 394; Hamilton vs. Elliott, 5 S. & R., 375.)

III. And if Grice entered for condition broken during his life-time, his interest in the land was subject to sale by his administrator to pay debts against the same.

VORIES, Judge, delivered the opinion of the court.

On the 13th day of March, 1863, Daniel Grice, an old and infirm man, with his second wife, Sarah Grice, was residing on, and the owner of, a tract of land in Linn County in this State, described as the north-east quarter of the north-east quarter of section 26, township 59 of range 22. On that day said Grice and wife, by deed of that date, conveyed said land to the defendant, who was the son of the said Sarah, and the step-son of the said Daniel. The deed by which the land was conveyed contained this condition: "This conveyance is made for the consideration that the said William J. Wingate maintain his mother, the said Sarah Grice, his step-father, the said Daniel Grice, during their natural lives, also their two small children, John and Daniel, till such time as they may be able to do for themselves. Now, if the said W. J. Wingate shall fail to perform and fulfill the said consideration on his part, the conveyance to be of no effect; but if said Wingate shall fully perform and fulfill the said consideration on his part, then this conveyance to be absolute, and the said party of the second part shall have an absolute title to the above described land, to have and to hold the same with the appurtenances to himself and his heirs and assigns forever."

Wingate, shortly after the execution of the deed, moved on the land and resided there with Grice and wife for three or four weeks and then abandoned the place, moved out of the neighborhood in a couple of years, and never returned until

several years after the death of Grice, alleging that he would not live there with the old people for more than four times the value of the land. Grice and his wife continued in possession of the land until the death of Grice, which took place in about three months after the execution of the deed. Mrs. Grice remained on the land until the year 1868, when she removed to the house of a relative who has taken care of her since.

There is no pretense in the evidence that Wingate ever supported Grice and wife or the children. After the death of Grice, one C. D. Pratt was appointed administrator of his estate, and in the year 1868 procured an order to be made by the Probate Court of Linn County, ordering said administrator to sell said land for the purpose of the payment of the debts against said estate. By virtue of this order the land was sold by the administrator as the property of Grice, deceased, and the plaintiff became the purchaser at said sale, and received the administrator's deed theerfor.

The plaintiff, after his purchase of the land from the administrator, filed his bill setting forth these facts, and charging, that the conditions upon which the deed was made by Grice to defendant had been broken, and that Grice made an entry on said land for the conditions broken, and that the deed thereby became void. The plaintiff therefore prayed, that said deed from Grice to defendant be set aside and held for naught, etc.

The defendant in his answer admits that Grice, on the 13th of March, 1863, was the owner of the land, and that he executed the deed with the conditions stated; admits the death of Grice, and that Pratt was appointed his administrator; but denies that the administrator in pursuance of an order of the Probate Court sold the land to plaintiff as is charged, or that he sold the same in pursuance of any competent authority; denies that he failed to comply with the conditions imposed by the deed, but charges that he at all times complied with the same; denies that Grice at any time entered on said land for the breach of the condition in said deed, or that any

26—VOL. LIII.

entry was ever made by said Grice for condition broken by which said conveyance became void, etc.

A replication was filed, denying the performance by said defendant of the conditions contained in the deed.

At the December Term of the Linn Circuit Court for the year 1869, the cause was tried. The plaintiff offered to read in evidence, a deed from Chester D. Pratt, as administrator of the estate of Daniel Grice, purporting to convey the land in controversy to plaintiff. The defendant objected to the introduction of this deed in evidence, because it appeared by said deed, that the order under which the sale was made, as well as said deed, was void, for the reason that it appeared from the deed, that the administrator made report of said sale to the same term of the court at which the sale was made, and for the reason, that it appears that no notice was given of the sale as required by law, and that the land was sold at a different time from that at which it was advertised to be sold; and for the further reason, that the proceedings in the Probate Court in reference to the sale of the land ought first to be shown before said deed could be read. All of these objections were overruled by the court, and the deed read in evidence; to which defendant excepted.

The plaintiff also offered in evidence the report made by said administrator of the sale of said land to plaintiff referred to in the deed, together with the advertisement and appraisement filed therewith, and the order of said Probate Court confirming said report. To the reading of this report the defendant also objected, for the reasons, that said report could not be offered to cure any defects apparent on the deed, and because the report shows that the lands were never appraised by three appraisers as required by law, while it appeared by the appraisement, that the land was only appraised by two appraisers and the appraisement did not appear to have been sworn to.

These objections being overruled by the court, the defendant again excepted. Several witnesses were then introduced by plaintiff, tending to prove the facts as stated in the first part of the opinion.

The defendant on his part introduced, as a witness in the cause, Sarah Grice, who testified that she was the widow of the said Daniel Grice, deceased. The plaintiff then objected to her being further examined as a witness in the cause, for the reason that she was a party to the contract out of which the action arose, and Daniel Grice, another party to the contract, being dead, it was not competent for her to testify in the cause. This objection was overruled by the court, but the court ruled, that said witness was not competent to testify to anything that passed between her husband and the defendant during her husband's life-time, or to testify about anything her husband may have said. The defendant then offered to prove by said witness, that the defendant left the farm under an arrangement between himself and Daniel Grice, and that said Grice did not remain upon and retain possession of the farm because of a breach of the condition of the deed, and that he never claimed any exclusive title to the land against the defendant after the making of the deed. The court excluded the evidence, and the defendant again excepted.

The defendant offered no other evidence, but asked the court to make several declarations of law, which were refused by the court, and which will not be further noticed, for the reason, that it will not be considered any error in the court to refuse declarations of law in an equitable proceeding by bill in the nature of a bill in chancery.

The court at the close of the evidence found the issues for the plaintiff, and rendered judgment, declaring said deed from Grice to the defendant of no effect and void, and vesting the title to the land in controversy in the plaintiff.

The defendant in due time filed his motions for a new trial and in arrest of judgment, assigning as grounds therefor the opinion of the court excepted to as well as the objection, that the petition did not state facts sufficient to constitute a cause of action. These motions being severally overruled, the defendant again excepted and appealed to this court.

The first question to be considered in this case is, as to the propriety of the action of the court trying the cause in ad-

mitting in evidence the deed of the administrator of Grice to plaintiff for the land in controversy.

It is objected to by the defendant, because it appears by the deed that the report of the sale was made at the same term of the court at which the sale was made, and also, that no notice had been given of the time and place of the sale, which it is stated appears by the deed itself.

The statute requires, that a deed made by an administrator for land sold under an order of a Probate Court shall refer " in apt and appropriate terms to the order of sale, and the court by which it was made, the certificate of appraisement, the advertisement, the time and place of sale, the report of the proceedings and order of approval thereof by the court, and the consideration and conveying to the purchaser all the right, title and interest, which the deceased had in the land."

The statute further provides, that the deed so made shall be evidence of the facts therein stated. · (W. S., 98, §§ 35, 37.) The deed under consideration referred to the order of sale as having been made by the Probate Court of Linn County on the 12th day of January, 1869, and alleged, that previous to the day of sale the administrator gave notice that the property would be sold on the 8th day of March, 1869, while said Probate Court was in session ; that the notice was given twenty days before the day of sale. The deed also recited, that previous to such day of sale the administrator had had the real estate appraised in due form by three disinterested householders of the county (setting out their names), and that said appraisers on the 8th day of April, 1869, after making the affidavit required by law, appraised the land named and made their certificate thereof.

The deed then further recites, that by virtue of said order of sale, notice and appraisement, said administrator did .on the 8th day of April, 1869, between the hours, etc., while the said Probate Court was in session, expose the property to sale, etc. The deed then further recites, that at the term of the said Probate Court following said sale, it being the April Term 1869 of said court, and on the 15th day of April, 1869,

said administrator made to said court a report verified by his affidavit as the law directs, accompanied by the certificate of appraisement, and a copy of the advertisement and the proceedings touching said sale and of the property sold, and to whom sold; which report was thereupon approved by said court by its proper order entered of record. The deed also recites the consideration, and proceeds to convey the property etc.

It will be seen from the above recitals, that everything required by the statute is recited, but that the dates for the doing of the acts are so stated as to render them inconsistent. It is recited, that the land was advertised for sale on the 8th day of March, 1869, and that previous to the day of sale, on the 8th day of April, 1869, the land was appraised. The deed also recites, that the sale was made on the 8th day of April while the Probate Court was in session, and then it is stated, that the report of the sale was made to the next succeeding term on the 15th day of April, 1869. In order to explain these inconsistencies, it was insisted by the plaintiff, that in drawing the deed the recitals of the time of the sale, and of the date of appraisement, were mistakenly stated in the deed to have been the 8th day of April, when in truth each of these things actually took place on the 8th day of March, and that the insertion of the 8th day of April was a mere clerical error, and the defendant produced and offered in evidence the original report and appraisement, and notice returned to the court by which it appears, that the sale of the land was made on the 8th day of March, 1869, and the appraisement thereof made on the 1st day of March, 1869, and that the report of the sale by the administrator was approved by the court on the 15th day of April 1869.

It is insisted by the defendant, that this report and accompanying papers were improperly admitted in evidence, as they were incompetent to prove a clerical error in the deed, or to cure any of its defects, and the admission of this evidence is relied on as a ground for the reversal of the judgment.

The deed makes all of the recitals required by the statute,

or in other words it refers to the order of the court and all of the other matters required by the statute to be referred to. It is stated, that the notice was given that the sale would take place on the 8th day of March, and that previously to the day' of the sale, the property was appraised by three disinterested householders. This was all that was necessary, but the deed proceeds to falsely recite the fact that the appraisement was made on the 8th day of April, and the same may be said in reference to the statement of the time at which sale took place; the deed states that the sale was made by virtue of the order and advertisement, and then falsely states, that the sale took place on the eighth day of April, and the report of the sale made at the next term of the court, which was on the 15th day of April; so that when we take into consideration the report and accompanying papers, it clearly appears that the statement, that the appraisement was made, and that the sale took place, on the 8th day of April, was merely a clerical error made in drawing the deed, which could be properly corrected by the original papers in the case, when properly admitted for that purpose. It appears, that the report of the sale was properly made and approved by the court having jurisdiction of the matter, and that the sale was, in fact, properly made. These irregularities in the execution of the deed were therefore properly explained and corrected by the other evidence in the cause, and will be disregarded. (Stewart vs. Severance, 43 Mo., 322; Lessee of Glover's heirs vs. Ruffin, 6 Ohio, 255.)

This is not like the case of Strouse vs. Drennan, 41 Mo., 289. In that case no report of the sale had ever been made, none was stated to have been made in the deed, and none in fact was ever made at the next term of the court, as the law directs; but the report was made and confirmed on the day of the sale, and it was held in that case, that the court had no authority to act upon the report at that time; and no appraisement of the property, in that case, had ever in fact been made. It was for these defects and omissions, that the sale was in that case held to be void. Here the proper steps had

been taken, and the question is, as to whether the real facts can be shown to prove a clerical error in the deed.

But it is further contended by the defendant, that it is shown by the report and appraisement read in evidence in this case by the plaintiff, that no proper appraisement was made; that the appraisement was only signed by two appraisers, and that the oath taken by them was not properly certified by the officer before whom the affidavit was made; that there is no name of any officer signed to the *jurat* to the affidavit. It is provided by our statute concerning the construction of statutes, (2 W. S., 887, § 6,) that "words importing joint authority to three or more persons shall be construed as authority to a majority of such persons unless otherwise declared in the law giving such authority." It would seem in this case, that the appraisement was made by two of the appraisers; it is a compliance with the law, and is therefore good, and that this objection raised to the appraisement cannot avail.

To the objection, that it did not appear that the appraisers were sworn by any party authorized to administer an oath, and that there was no name of an officer subscribed to the *jurat* to the affidavit of the appraisers, it may be said, that the statute does not require the administrator to file with his report the affidavit of the appraisers. It is only required that he shall file the certificate of appraisement. This he did in this case, and states in his report, that the appraisers were sworn as the law directs, and the same recital was made in the deed made by the administrator. The court having jurisdiction approved of the report of the sale, and we are not authorized to say, that they did so on insufficient evidence. It is rather to be presumed, that it was made to appear to the court, that the appraisers had been duly sworn, and by the examination of the record it will be found that the affidavit did accompany the report, which was subscribed by two of the appraisers, and at the bottom, immediately under their names, is the following:

"Subscribed and sworn to before me, on the 8th day of March, 1869.·

C. D. PRATT, Administrator of said estate."

The only objection that can be made to the affidavit on the face of the papers is, that Pratt subscribed the *jurat* to the. affidavit, as administrator, in place of some official capacity which would authorize him to administer oaths. This matter was before the court at the time the report was approved, and the court approved the 'report, and we will not say that it did wrong. If sales are to be set aside and held void for these small irregularities, if they be irregularities, then there will be no safety in purchasing at such sales, and the result will be, that all property sold at such sales, will go into the hands of sharpers at a sacrifice. (McVey vs. McVey, 51 Mo., 406.)

The next ground insisted on by the defendant for the reversal of the judgment in this case is, that the court trying the cause improperly excluded the evidence of Sarah Grice, who was offered by the plaintiff as a witness in the cause. Sarah Grice was the wife of Daniel Grice, who, together with said Sarah, conveyed the land in controversy to the defendant. The plaintiff objected to her as a witness in the cause, on the ground that she was incompetent. The court overruled this objection, but at the same time ruled, that she could not testify to anything that passed between her husband and the defendant during the lifetime of the husband, or testify as to anything that her husband said. The defendant then offered to prove by said witness, "that he left the farm under an arrangement between himself and Grice, and that said Grice did not remain upon and retain possession of the farm because of a breach of any of the conditions of the deed, and that Grice never claimed any exclusive title to the property against the defendant at any time after making said deed." This evidence was excluded by the court, which is the ground of the objection made by the defendant.

The first section of our statute concerning witnesses removes all objections to the qualification of a witness to testify in

a cause on the ground of interest in the event of the cause, whether as party or otherwise, except in some particular cases named in the statute.

The fifth section removes the disqualification of married women in certain enumerated cases where the action is prosecuted in the name of, or against, her husband, whether she be joined as a party or not, with this provision at the end of the section, "provided that nothing in this section shall be so construed as to authorize or permit any married woman while the relation exists, or subsequently, to testify to any admissions or conversations of her husband, whether made to herself or third persons." (W. S., 1373, §§ 1, 5.) This provision of the statute was intended to apply to all cases, whether the husband was a party to the action or not; and as well where the marriage relation continued to exist between the parties, as where it had been severed either by death or otherwise.

It was intended to leave the disabilities of a married woman, in reference to these matters, just as they were at common law.

At common law, being a party to an action, or interested in the event, disqualifies a person as a witness. This disqualification is removed by the first section of our statute.

At common law, husband and wife were disqualified to be witnesses for or against each other, or to testify to facts learned from each other while that confidential relation existed.

The fifth section of our statute has removed this disability so far as to qualify the wife to testify in certain enumerated cases, and to certain facts where her husband is a party; but has expressly continued the disability of the wife to testify to any admissions or conversations of her husband, whether to herself or to third persons.

The evidence excluded by the court was thereby rendered inadmissible. The witness could not testify to the facts proposed to be proved, without stating what her husband had said. She could not state what agreement was made by her husband with defendant without stating what he had said,

and how could she tell whether he claimed the land, unless she learned it from him. The evidence attempted to be elicited by the defendant having been stated in a negative form, can make no difference. No intelligent answer could be made by her unless she stated facts learned from her husband. This kind of evidence by a wife is excluded on the ground of public policy, and is necessary to preserve the harmony of the marriage relation. (1 Greenl. Ev., §§ 254, 336, 337, 338; Babcock vs. Booth, 2 Hill, 181; Gee vs. Lewis, 20 Ind., 149; Coffin vs. Jones, 13 Pick., 441.)

The deed from Grice to the defendant, as set forth in the petition, and admitted in the answer, was clearly a conveyance upon condition, and whether it was a prior or subsequent condition can make no difference in this case. The language used in the deed is, "This conveyance is made for the following consideration, that the said William J. Wingate maintain his mother, the said Sarah Grice, his step-father, the said Daniel Grice, &c. * * * Now, if the said William J. Wingate shall fail to perform and fulfill the said consideration on his part, this conveyance to be of no effect; but if said Wingate shall fully perform and fulfill the said consideration on his part, then this conveyance to be absolute, and said party of the second part shall have an absolute title to the above described land, to have and hold the same, &c." It would seem from this language, that it was intended by the parties, that the title should not vest, until the condition was performed, and in construing the deed the court will, if possible, construe it in conformity with the intention of the parties; but as before stated, for the purposes of this case it can make no difference, for the plaintiff charges that an entry was made for condition broken, and the proof shows, that the grantor in the deed was in the possession of the land at the time of its execution, and that after the defendant had removed from the land, Grice remained in possession until his death, and there is no pretense in the evidence, that the defendant ever performed, or offered to perform, any part of the condition or consideration upon which the conveyance was made.

In such case, no formal entry for condition broken was necessary, the fee remained in the grantor without any formal entry. This has been well settled by a number of adjudged cases. (Kennebeck Bank vs. Drummond, 5 Mass., 320; 2 Washb.Real Prop., 13, § 16.) It is however contended, that the right of the grantor to hold the land for condition broken is not assignable, and that even if Grice had a right to enter and hold the land for condition broken, his right not being assignable the plaintiff by his purchase at the administrator's sale acquired no right to the land, and several authorites are referred to by the defendant to sustain the position taken. In the case of Nicoll vs. The N. Y. & Erie R. R. Co., (12 Barb., 460,) it was held, that where land was conveyed with a condition subsequent, one claiming title by a conveyance from the grantor before a breach of condition, has no title, and cannot recover or forfeit the estate for a condition broken subsequent to his purchase. The case of Warner vs. Bennett, 31 Conn., 468, is to the same effect. We find no case where it is held, that the grantor cannot transfer the estate after an entry for condition broken, or in a case where the estate is only to vest after the condition is performed, and the condition has not been performed. But the plaintiff in this case labors under this difficulty. If it should be conceded that Grice in his lifetime, entered for condition broken, or that the condition was a prior condition which was never performed, and that therefore, the title to the land never vested in the defendant, and that the administrator's deed was sufficient to vest all of the title of Grice at the time of his death in the plaintiff, then he would have a plain remedy at law, an action of ejectment would be the plaintiff's proper remedy to recover the possession of the land. He could have no possible business in a court of chancery, unless where it was shown that defendant was using the deed to his prejudice, claiming title to the land so as to create a cloud on plaintiff's title. It would even then be doubtful whether a court of chancery would give him any relief, but if he could show that he was being injured in his estate by the conduct of the defendant in asserting or claiming title un-

der the deed, a court would in a proper case remove the cloud from his title. But he makes no such showing here. There is no charge in the petition, that the defendant even claims to hold the land by virtue of the deed, or that he is otherwise using the same to the detriment of the plaintiff.

There is nothing in fact, to show that his remedy at law is not clear and complete by an action of ejectment. (Warner vs. Bennett, 31 Conn., 468 ; Jackson vs. Topping, 1 Wend., 389 ; Kennebeck Bank vs. Drummond, 5 Mass., 320 ; Gray vs. Blanchard, 8 Pick., 283 ; McKissick vs. Pickle, 16 Penn. St., 140 ; Jackson vs. Allen, 3 Cow., 220.)

It cannot be seen from any allegation in the petition, whether the plaintiff or the, defendant, now has possession of the land, or how the plaintiff is being injured by the defendant. If a proper case were made by the petition, a court would be justified in giving the proper relief and removing the cloud, if any, from the plaintiff's title, but from all that appears, his remedy is complete at law.

Judges Napton and Wagner being absent, the other Judges concurring, the judgment is reversed, and the cause remanded.