# CHARLESTON.

## HUNTER *v.* STRIDER'S ADM'X.

Submitted September 5, 1895—Decided November 29, 1895.

HUSBAND AND WIFE—WRITTEN ASSIGNMENT—EVIDENCE.

A written assignment from husband to wife confers on her during coverture the equitable and beneficial interest, and at his death the legal title, and is therefore admissible as evidence to prove her title in a joint suit that has survived to her by reason of his death.

D. B. LUCAS and GEO. BAYLOR for plaintiff in error.

D. B. LUCAS cited, Smith, Merc. Law, § 12; 20 W. Va. 498; 16 W. Va. 555, 717; Code, c. 66, s. 12; 31 W. Va. 374, 377; 37 W. Va. 377; 77 Tex. 119; 26 S. R. 760; 39 W. Va. 357; 18 Atl. Rep. (Vt.) 311; Code, c. 131, s. 9.

W. H. TRAVERS for defendant in error, cited 21 W. Va. 696; Code, c. 46, ss. 1, 2, 3; 36 W. Va. 11; Kelley, Mar. Women, 131, 132; 1 Pom. Eq. Jur. § 159; 3 Id. §§ 1098, 1099; Code, c. 66, ss. 1, 3, 12; 14 Am. & Eng. Enc. Law, 614, notes; Code, c. 104, s. 19; 5 W. Va. 501.

DENT, JUDGE:

Writ of error to a judgment of the Circuit Court of Jefferson county rendered on the 13th day of December, 1894, in an action of *assumpsit* instituted by J. H. L. Hunter and Mary E. Hunter, his wife, against Amanda P. Strider, ad-

ministratrix of John H. Strider, deceased. J. H. L. Hunter having died during the pendency of the suit, it was "ordered to proceed in the name of Mary E. Hunter, surviving plaintiff." The following proceedings and pleadings were had, to wit:

"West Virginia, Jefferson County, to wit: In the Circuit Court of said County, September Rules, 1888.

"James H. L. Hunter and Mary E. Hunter, his wife, complain of A. P. Strider, as administratrix of John H. Strider, of a plea of trespass on the case on *premises*, for that: Whereas, the defendant's intestate, on the 1st day of January, 1888, was indebted to the plaintiffs in eight hundred dollars for the price of goods sold and delivered by the plaintiffs to the defendant's intestate at his request; also in eight hundred dollars for the price and value of work and materials done and provided by the plaintiffs for the defendant's intestate at his request; also in eight hundred dollars for money lent by the plaintiffs to the defendant's intestate at his request; also in eight hundred dollars for money paid by the plaintiffs for use of the defendant's intestate at his request; also in eight hundred dollars for money received by the defendant's intestate for the use of the plaintiffs; also in eight hundred dollars for money found to be due from the defendant's intestate to the plaintiffs on account stated between them. And whereas, the defendant afterwards, on said day and year, in consideration of the premises, respectively, promised to pay said several sums of money, respectively, to the plaintiffs on request, yet she has disregarded said promises, and has not paid any of said moneys, or any part of them, to the plaintiffs' damage eight hundred dollars; and thereupon suit is brought.

"LUCAS, P. Q."

Indorsed: "J. H. L. Hunter and wife, Mary E. Hunter, Agt. John H. Strider's Adm'x.

"ASSUMPSIT.

"Lucas, P. Q.

"1888, Sept. Rules.—Declaration filed and conditional judgment.

"1888, October Rules.—Conditional judgment affirmed, and writ of inquiry awarded."

"BILL OF PARTICULARS.

"Mrs. Amanda P. Strider, administratrix of the estate of John H. Strider, deceased, to J. H. L. Hunter and Mary E. Hunter, Dr.

| | | | |
|---|---|---|---|
| Settled in...... | To 17 months' services as superintendent of the Jefferson County Cooperative Association in Charles Town at $1,000 per annum ..................................... | $1,416 66 | |
| 1884.............. | To 3 months assisting in settling up the business of the above store | 150 00 | |
| Not delivered. | To 4 y'ds blue flannel, 50............ | 2 00 | |
| | To overcharge in harness.......... | 2 50 | |
| | To freight paid on drill, &c., 92 and $1................................... | 1 92 | |
| | To overcharge in Watson's bill... | 14 85 | |
| | To mortising 50 posts, sold to Anderson ................................. | 2 50 | |
| Tavener has a receipt. | To error in charging H. Tavener's acc't to me, *Tavener's acc't to me*, it was paid................... | $13 71 | |
| do | To error in W. W. Myers' acc't to me................................... | 4 63 | |
| 1882............... | To error in charging 3 y'ds cashmere to me........................... | 3 00 | It was paid. |
| 1882............. ...... | To error in charging order to C. Wright. .............................. | 4 75 | do do do |
| | To overcharge Dick Alexander's acc't ................. .................. | 2 15 | |
| It was paid..... | To error in charging Chas. Cowley's acc't............... ............. | 2 44 | It was paid. |
| 1884............... | To 720 chestnut rails..... ............. | 43 20 | |
| | To amount paid for hauling........ | 14 20 | |
| | To error in price of locust posts, the price was to be 20 cts. per post ......... ......... ................. | 3 00 | |
| | To credits given by Strider........ | 44 15 | |
| | To credits which he failed to give that are on his books. I demand the books. | | |
| Dec'r. '83........ | To viz: 1 pr. slippers, returned... | 1 00 | See his book. |
| | 1 pr. gums, returned.............. | 60 | do do do |
| | 1 pr. blankets, sold to Joe Marlow ............................... | 1 50 | do do do |
| Jan 11, '84 ........ | 3 lbs. butter, 25..................... | 75 | do do do |
| M'ch 15.............. | Produce omitted.................. | 1 28 | do do do |
| | Orem's acc't. I am not bound to pay acc'ts Strider charged to me without my permission ..................................... | 30 27 | |
| May, '84......... | To 1 corn planter........................ | 15 00 | Produce Led. |
| | To amt. paid Mrs. Crane for chickens ............................... | 3 16 | do do |
| | To by wife, they were bought by her and delivered at the store for her. | | |
| | I claim credit for borrowed money I returned, viz., $10 and $5.00............................. | 15 00 | do do |

|  | To error in charging Lee Washington's acc't. Lee paid his account | 70 |
| May, '84 | To error in plaster | 1 62 |
|  | To error in extension in S's bill. | 4 38 |
|  | Same | 2 51 |
|  | To overcharge in Kable's account | 19 85 |
|  | To interest on bill paid H. & Bros., Baltimore | 1 38 |

"I demand Strider's ledger, for our credits in the year 1883, in order that we may be protected.

"I have two credits to give Strider when the ledger is produced."

Indorsed:

"Bill of particulars.

"J. H. L. Hunter and Mary E. Hunter v. Mrs. Amanda P. Strider, administratrix of the estate of John H. Strider, deceased.

"Filed in open court, Dec. 7, '88.

"Teste:    T. W. Latimer, Clerk."

"ORDERS.

"J. H. L. Hunter and Mary E. Hunter, his wife v. A. P. Strider, Administratrix of John H. Strider, deceased.

"This day came the parties, by their attorneys, and by motion of the defendant this cause is continued at its costs on account of the absence of John Watson, a witness duly summoned for the said defendant. A rule is awarded against the said John Watson, returnable the 19th day of May next, to show cause why he should not be punished for contempt for his absence as a witness as aforesaid.

"This cause is set for trial on the fifth day (being May 19th, 1894) of the next term of this court."

"J. H. L. Hunter and wife v. John H. Strider, et al.

"This day came the parties, by their attorneys, and the defendant, by his attorney, moves the court to exclude at the trial of this cause the deposition of J. E. Hunter, taken on the 10th day of April, 1889, and returned on the 19th day of April, 1889, for reasons indorsed on the said deposition, and the court is of opinion and doth order that the said deposition be excluded and be not read on the trial of this cause. And for further plea the defendant pleads

the statute of limitations; to which the plaintiff replies generally and issue is joined thereon, and the plaintiff pleads the statute of limitations to defendant's set-off and replies generally thereto, and issues are joined on said pleas."

"J. H. L. Hunter and Mary E. Hunter *v.* A. P. Strider, Administratrix of John H. Strider.

"This day came the defendant, by her attorneys, and files by leave of court, her plea of payment and set-off, together with the account accompanying the said pleas."

Hunter *vs.* Strider's Adm'r'x *&c.*

"This day came the parties, by their attorneys, and the plaintiff replies generally to defendants plea of set-off and payment, and issues are thereon joined."

Hunter, *&c. vs.* Strider, *&c.*

"This day came the parties, by their attorneys, and, the the death of James H. L. Hunter being suggested, it is ordered that this case proceed in the name of Mary E. Hunter, the surviving plaintiff."

### "VERDICT.

"Mary E. Hunter v. A. P. Strider, Administratrix of John H. Strider.

"We, the jury, find for the defendant.

"WM. C. FRAZIER, Foreman."

### "ORDER.

"Mary E. Hunter *v.* John H. Strider's Adm'r'x, *&c.*

"Order entered December 13th, 1894:

"This day came the parties, by their attorneys, and the motion of the plaintiff in arrest of judgment and to set aside the verdict and grant her a new trial on the ground that the court erred in excluding from consideration of the jury the assignment from J. H. L. Hunter to Mary E. Hunter, and in excluding from the consideration of the jury all plaintiff's evidence, and instructing the jury to find a verdict for the defendant, being argued by counsel and considered by the court, the court doth overrule said motion; to which ruling of the court the plaintiff excepts, and prays that her two bills of exceptions marked Nos. 1

and 2 may be signed, and made part of the record, which is accordingly done."

### "JUDGMENT.

"Therefore it is considered by the court that the plaintiff take nothing, and the defendant recover against the plaintiff her costs in this behalf expended."

### "BILL OF EXCEPTIONS No. 1.

"Be it remembered that on the trial of this case the plaintiff, to maintain her action, introduced and offered to read in evidence before the jury the following assignment from J. H. L. Hunter to plaintiff, the genuineness of the signature to said assignment being admitted:

### " 'COPY OF ASSIGNMENT.

" 'For value received, I assign and transfer to Mary E. Hunter the balance due me on my salary after settlement with John H. Strider. Given under my hand and seal this 27th day of May, 1884.   " 'J. H. L. HUNTER. [Seal.]

" 'Charlestown.'

"But defendant objected to the reading of the said assignment in evidence, and the court sustained said objection, and refused to permit said assignment to be read in evidence; to which ruling of the court the plaintiff excepted, and prayed that this, her bill of exceptions, may be signed, sealed, and made a part of the record, which is accordingly done.

"[Signed]   E. BOYD FAULKNER.   [Seal.]"

### "BILL OF EXCEPTIONS No. 2.

"Be it remembered that on the trial of this case the plaintiff, to maintain her action, introduced before the jury a witness, Sam'l Hunter, who testifies that he was the son of J. H. L. Hunter; that he knew his father was employed by J. H. Strider, deceased, at what was known as the 'Grange Store,' as superintendent, for about seventeen months, and that after the store closed he knew his father was engaged about three months in closing up the books of the store.

"And the plaintiff further, to maintain her action, introduced another witness, Elmer Hunter, who testified be-

fore the jury that he was present at a conversation between J. H. L. Hunter and J. H. Strider, deceased, on the turnpike, a short distance below Charlestown, in May, 1885, in which Hunter asked Strider why he was leaving town, when this was the day fixed for the arbitrators to meet to adjust and settle matters between them; that Strider replied that Mr. Barr, one of the arbitrators, was not in town, 'Hunter said that it seemed strange Mr. Barr was not in town, as he promised to be there without fail, and asked Strider if he would not go back, which Strider refused. Hunter then said "If you will not go back, how much do you owe me?" and Strider replied, "That is very easy gotten at as I agreed to give you one thousand dollars per year, and you pay your own board; and, deducting your store account and the money I have paid you, I suppose I owe you in the neighborhood of five hundred dollars." Hunter said, "Why not go back and settle it now, as it is only about 15 minutes after time, and we are right near town?" Strider said, "I will attend to it some other time." J. H. L. Hunter is my uncle.'

"And this being all the evidence introduced on the part of the plaintiff, and the plaintiff having rested, defendant moved the court to exclude all the evidence of the plaintiff from the jury, which motion the court granted, and to the granting of which motion the plaintiff excepted; and thereupon the court instructed the jury as follows: 'The court instructs the jury to find a verdict for the defendant;' to the granting of which said instruction the plaintiff excepted; and, the jury having found a verdict in favor of the defendant, the plaintiff moved the court to arrest the judgment, set aside the verdict, and grant her a new trial, which motion the court overruled, and the plaintiff excepted, and prayed that this, her bill of exceptions, may be signed, sealed, and made a part of the record, which is accordingly done.

"[Signed]

E. BOYD FAULKNER, Judge.   [Seal.]"

In addition it was admitted that the plea of *non assumpsit* was in, and that the defendant filed notice of offsets, but that, owing to clerical oversight, they were omitted from

the record. The gist of the complaint here is that the circuit court erred in excluding plaintiff's evidence from the jury, and directing a verdict for the defendant.

As appears from the whole record, this is a suit instituted by a husband and wife jointly, to recover for the services of the husband, which he has assigned to the wife. The apparent ground alleged for the action of the circuit court is that the suit by the wife in such case can not be maintained except in a court of equity. It is a rule of the common-law that where the wife is the meritorious cause of action she may sue alone or she may join with her husband. It is, however, considered his suit, and "the effect of joining the wife in an action when the husband might sue alone is that, if the husband die whilst it is pending, or after judgment and before it is satisfied, the interest in the cause of action will survive to the wife, and not to the executor of the husband, though, if he sued alone, she would have no interest." 2 Tuck. Bl. Comm. 210, also 209. The wife is joined, not because she has the right to sue, but, holding the equitable title in case of his death, and the removal of her coverture during the pendency of an action, legally his but equitably hers, it may survive to her and be continued to judgmemt, execution, and satisfaction in her name, for her benefit, and not go to his personal representative. In all cases in which she is joined her interest must be expressly stated or set out in the declaration. This, however, can only be taken advantage of by demurrer to the declaration, as the mere joining her in the suit in absence of a demurrer would be matter presumptive that she was the meritorious cause of the action, and that the same was carried on for her benefit, and the defect in the declaration could be supplied in the proof; for in such case there is no variance between the *allegata* and *probata*, but a defective pleading, not objected to, cured by the proof of that which the pleading was intended to and should contain. This was the common-law rule of pleading in case of joinder of husband and wife, and has in no wise been changed by statute except to enlarge the powers of the wife. In the case of *Fox* v. *Insurance Co.*, 31 W. Va. 378 (6 S. E. 929) Judge Snyder says: "At common law a

suit by husband and wife was a suit by the husband alone, and this was so because the wife was not considersd *sui juris*, and could never sue in her own name, but only by her next friend. The rule has been abrogated by our statute, and therefore it is not true in this state that a suit by a husband and wife is the suit of her husband alone; it is the joint suit of both." The declaration in that case was objected to because it alleged that the defendant owed the plaintiffs, meaning both husband and wife, when it should have been that it owed the wife; but the court overruled the objection, holding the allegation proper because it was the joint suit of both, although only for the use and benefit of the wife.

Under these rulings the present suit must be considered the joint suit of husband and wife for the benefit of the wife, and it does not matter whether her title was legal or merely equitable; the suit was proper both under the statute and at common-law, with this difference alone: that if her right was legal, she could sue alone or join her husband, in her discretion, but if her right was merely equitable, she must join her husband, as the holder of the legal title. *Robinson* v. *Woodford,* 37 W. Va. 377 (16 S. E. 602). In the latter case it is held that, notwithstanding section 3, chapter 66, Code, a wife can take from her husband by purchase or gift, subject to the rights of creditors. The legal title remains in him, and the equitable title and beneficial interest vest in her; and therefore he or she would have the right to institute a suit at law in their joint names to recover such property for her benefit, and in case of his death the suit would survive to her. Such is this case. But the defendant insists that the evidence was properly excluded, for the reason that the assignment offered in evidence is not set out either in the declaration or the bill of particulars, nor does the bill of particulars show who rendered the services sued for, and to whom, nor does the evidence support the declaration and bill of particulars.

It is true that the wife's interest is neither shown in the declaration nor bill of particulars, but this is an error that should have been taken advantage of by demurrer or motion to reject the bill of particulars, which must be con-

sidered as waived. The suit, being a joint suit of husband and wife, must be regarded as a suit for the benefit of the latter alone. The bill of particulars, taken together with the declaration, shows that the services were rendered for the decedent whose administrator is sued, and were rendered by the husband, being a charge for his services as superintendent of Jefferson County Co-operative Association in Charlestown, at one thousand dollars per annum. It is true, there is some apparent uncertainty about the charge, and yet it is not so vague as not to give the defendant full notice of the character of the plaintiff's claim, in accordance with section 11, chapter 125, Code. *Abell* v. *Insurance Co.*, 18 W. Va. 400. The evidence of the two witnesses introduced on behalf of plaintiff tended to prove this item of the account, and should not have been excluded.

Had it not been for the death of J. H. L. Hunter, it would not have been necessary to prove an assignment to his wife, as he would have had the right to carry on the suit for her benefit; and no such question could possibly arise, but a judgment in favor of both would have been a bar or estoppel to another suit for the same cause of action. *Fox* v. *Insurance Co., supra.* While he lived, the assignment could not be called in question, and did not figure in the suit. *Clarke* v. *Hogeman*, 13 W. Va. 718. An unexpected contingency has arisen. By his death the suit has taken a different shape. It survives to his wife, and, as it is concerning his services, the duty devolves on her to show her title to the same, so that a judgment in her favor will be a bar to a suit by his personal representative. It has ceased to be a suit in his name for her benefit, and it can not be revived in the name of his personal representative, but survives to her in her own right, and must thus be prosecuted by her. It is not like an ordinary suit by the assignee in the assignor's name, for when the husband sued he not only sued as an assignor, but as the husband holding the legal title for the benefit of his wife. Originally it was a joint suit, but now it has become her individual suit for his services, and she must show for what cause she is entitled to recover for such services; otherwise on a demurrer to

evidence she would be nonsuited. She attempts to do so by introducing the assignment, the genuineness of which is admitted, from her husband to herself. The court excludes it for the reason that an assignment from husband to wife is only recognized in a court of equity, and thereby defeats her action, under the common-law rule that they are one person, and can not contract with each other. This very question was settled in the case of *McKenzie* v. *Railroad Co.*, 27 W. Va. 306, where it was held that a deed from husband to wife was properly admissible to prove her title to the property in controversy. Now, if this is the law when the husband is living and holding the legal title in trust for her, much more can it be said to be the law when the legal as well as the equitable title is cast upon her by his death. Her coverture no longer exists, and she is *sui juris.* By the assignment the equitable title and whole beneficial interest were vested in her, and he held only the naked legal title, which at his death followed the equitable. So the assignment is not wholly void, but even at law is recognized as conveying the equitable title and beneficial interest, and is, therefore, proper evidence to prove such title and interest, and, when the legal title vests in the beneficiary by reason of the death of the trustee, is proper evidence to prove the merged and solidified title.

The fact, therefore, that this was an assignment from husband to wife was insufficient to justify its exclusion from the jury.

For the foregoing reasons the judgment is reversed, the verdict of the jury is set aside, and the case is remanded to be further proceeded in according to law.